# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

DAJUAN MCCLANAHAN,       )
                                )
           Plaintiff,       )
                                )
        v.              )     Case No. 4:23-cv-00431-RK
                                )
SECRETARY OF THE TREASURY,     )
                                )
           Defendant.     )

## ORDER

Before the Court is Defendant Secretary of the Treasury's motion for summary judgment. (Doc. 40.)  This motion is fully briefed.  (Docs. 40, 45, 47.)  After careful consideration and for the reasons explained below, the Court **ORDERS** that Defendant's motion for summary judgment is **GRANTED**.

## Background[1]

This case arises out of Plaintiff DaJuan McClanahan's employment as a Tax Examining Clerk for the Internal Revenue Service ("IRS") in 2021.  In 2021, in addition to his role as Tax Examining Clerk on Team 34405, Plaintiff was selected as Team 34405's Backup Work Leader and an On-the-Job Instructor.  At the time, Plaintiff's second-level supervisor was Michelle Allen—Department Manager, and his third-level supervisor was Sherry Mueller—Program Manager.

On April 30, 2021, at 1:00 a.m., a co-employee—Marlon Brown—and Plaintiff had an interaction in which Mr. Brown physically threatened Plaintiff and used derogatory slurs (one of which pertained to Plaintiff's sexual orientation, the other to his race).  Plaintiff complained to a supervisor about this incident, and Ms. Allen submitted the paperwork to begin an Anti-Harassment investigation.  An investigation was completed with the assistance of Ms. Mueller, and Plaintiff and Mr. Brown were directed to have no contact as a result of the investigation.[2]

---

[1] The facts included herein are those that the Court concludes are uncontroverted.  Plaintiff attempts to controvert a significant number of facts by challenging the admissibility of the evidence, the knowledge of the affiant or document producer, or arguing a failure to prove a negative.  The Court attempts to address the most relevant arguments but is largely unpersuaded by Plaintiff's attempts to controvert the record.

[2] Plaintiff attempts to contest the foregoing facts by arguing that Ms. Allen's investigation affidavit, (Doc. 40-3), is not based on personal knowledge.  However, her answer explicitly states that "to her

Two months later, on June 29, 2021, after having a discussion with Plaintiff, Ms. Allen requested that Plaintiff transfer from Team 34405 to Team 34402. That same day, Plaintiff emailed Ms. Allen that he had decided to remain on Team 34405. Ms. Allen then emailed Plaintiff on June 30, 2021, stating that "[i]ts [sic] fine that you want to remain in Team 34405," but that "training is over" and Plaintiff would "[n]o longer be utilized as [On-the-Job Instructor]." (Doc. 45-6 at 1.)

Then, around July 27, 2021, Plaintiff requested that his work shift be changed from nights to days.[3] Ms. Mueller approved Plaintiff's request for a shift change on July 28, 2021. (Doc. 40-4 at 5 ("[Ms. Mueller] approved Mr. McClanahan's request to go to dayshift 1040X and assigned him to an upstairs team to prevent any overlapping encounters between him and Brown.").)

On August 4, 2021, Ms. Mueller generated a one-page memorandum reflecting that the investigation had ended with a determination that the incident between Plaintiff and Mr. Brown "was due to an ongoing, mutually disrespectful behavior between [Plaintiff] and Marlon Brown." (Doc.40-9 at 1.) There is a notation on this form that "Employee Refused to Sign 8/6/21." (*Id.*)[4] The memorandum advised Plaintiff that "[t]he directive to have no contact with Marlon Brown remains in effect indefinitely." (*Id.*)

Finally, on September 2, 2021, Plaintiff sent an email to Ms. Mueller stating that "effective immediately I will be switching teams and moving back downstairs to Katherine Minard's team. I have made the decision to move teams because every [sic] since Lisa Meyers has been back in the office, I have been met with nothing but corrective actions . . . . " (Doc. 40-12 at 2.) Later that

---

knowledge" Plaintiff and Mr. Brown were directed to have no contact. And, as a supervisor of Plaintiff, she would need to know which co-workers Plaintiff was permitted to work with. Moreover, Ms. Mueller's investigative affidavit independently establishes this fact. (Doc. 40-4 at 9.) Plaintiff provides no evidence in the summary judgment record controverting the fact that he and Mr. Brown were told to have no contact.

[3] Plaintiff attempts to controvert this fact by challenging the ultimate admissibility of Doc. 40-7 which appears to be a letter from Plaintiff to management requesting the shift change. Plaintiff argues that it lacks foundational requirements to be admissible. However, the standard for evidence at the summary judgment stage is "whether it could be presented at trial in an admissible form." *Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019). The information contained in the unsigned letter and its foundational basis could be inquired into and established at trial through Plaintiff's trial testimony. Significantly, Plaintiff did not submit any evidence such as an affidavit suggesting that he *did not* request a shift change (and, in his complaint, he pleaded that he requested a change to the day shift).

[4] Plaintiff disputes this fact because Plaintiff's signature does not appear on the form. Significantly, Plaintiff did not submit an affidavit or other evidence showing that he *did not* receive this form. Defendant's evidence establishes that Plaintiff was presented with the form and refused to sign it. Plaintiff did not properly controvert the fact in the record.

2

day, Department Manager Latifah Hisham responded, "Mr. McClanahan, it appears you are unaware that you do not inform upper management that you will be changing team. The Operations manager Sherry Mueller, assigned you to that team and that is where you will remain." (*Id.*) Plaintiff responded that "I have ADHD," and that Lisa Meyers' team was distracting to him; he then said again "I will be moving downstairs to Katherine Minard's team." (*Id.* at 1.)

Plaintiff initiated informal EEO counseling on or about September 7, 2021.[5] The EEO Report of Counseling reflects five situations Plaintiff relied on in bringing his complaint against the IRS to the EEO counselor:

1. 4/30/2021, Counselee reported co-worker for yelling derogatory slurs at him.
2. 6/29/2021, Counselee was moved from team 34405 to 34402.
3. 6/30/2021, Counselee was demoted because he didn't want to switch teams [referring to the loss of duties as Backup Work Leader and On-the-Job Instructor].
4. 7/27/2021, Counselee had to request change in TOD [time of day] because he felt unsafe at work.
5. 8/4/2021, Managerial Investigation/Counseling Memo.

(Doc. 40-13 at 2.) While Plaintiff attempts to controvert the record as to his informal EEO counseling by stating "Defendant's summarization of the five separate occasions of harassment does not accurately reflect the record," Plaintiff does not provide any evidence contradicting or supplementing these five instances of alleged harassment, which appear in the EEO Report of Counseling.

Plaintiff then proceeded to file a formal administrative complaint, which he signed on October 18, 2021. In his formal administrative complaint of discrimination, Plaintiff alleged discrimination based on disability and retaliation by checking boxes on the form, but Plaintiff did not check the box for "Sex/LGBT" as a basis of discrimination. On November 5, 2021, based on Plaintiff's informal EEO counseling and written formal administrative complaint, the IRS identified for investigation five bases of alleged discrimination being asserted by Plaintiff. The following claims were accepted for investigation:

1. on September 2, 2021, management denied his reasonable accommodation request to transfer from the night shift 1040-X to the day shift 1040-X;

---

[5] Plaintiff attempts to contest the precise date of filing the informal counseling request. The Court finds that the precise date of initiation is immaterial to its analysis herein.

2. on several dates, he was subjected to various acts of harassment, including but not limited to:

  a. on April 30, 2021, a coworker yelled derogatory slurs at him; and

  b. on August 6, 2021, he received a counseling memorandum regarding the managerial investigation into an incident that occurred on April 30, 2021, stating that management found that his actions contributed to a hostile work environment and directed him not to have any contact with the relevant coworker.

(Doc. 40-15 at 1.) Additional claims were dismissed and were not investigated:

3. on June 29, 2021, management informed him that he would be transferred from Team 34405 to Team 34402; and

4. On June 30, 2021, he was informed that he would no longer be utilized as a Back-up Work Leader/On the Job Instructor (OJI).

(*Id.* at 2.) In the letter accepting the formal complaint, the IRS informed Plaintiff that:

If you believe that the claims are incorrectly identified, you may notify Samara Abell . . . within five days of your receipt of this letter . . . . If you do not contact this office within five calendar days, it will be assumed that the claims were correctly stated.

Pursuant to 29 C.F.R. § 1614.106(d), you may amend the complaint at any time prior to the end of the investigation to include issues or claims that are like or related to those raised in the complaint.

(*Id.* at 3, 5.) As reflected in the IRS's Final Agency Decision, Plaintiff did not object or seek to amend his claims.[6]

Further facts as set forth below as necessary.

## Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In this context, a fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

---

[6] Plaintiff concedes this fact is reflected in the Final Agency Decision. Plaintiff then states that "whether Plaintiff objected to or sought to amend his claims cannot be established through the record by claiming the record is devoid of such evidence" and "Defendant cannot provide a negative without Plaintiff's testimony." (Doc. 45 at 6.) Again, the Court is not persuaded. Defendant established a lack of objection to the claims as stated by the IRS and a lack of amendment. If Plaintiff's testimony would have controverted that fact, Plaintiff should have submitted an affidavit or other evidence to properly contest such facts as required by Rule 56 of the Federal Rules of Civil Procedure.

4

477 U.S. 242, 248 (1986). In applying this standard, the Court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Recio v. Creighton Univ.*, 521 F.3d 934, 938 (8th Cir. 2008) (citation omitted). Thus, the relevant inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

"Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that '[a] party asserting that a fact . . . is genuinely disputed must support the assertion' with evidence, or with pleadings such as interrogatory answers and admissions. Failing to properly support the assertion permits the court 'to consider the fact undisputed for purposes of the motion.'" *Arnold v. McClinton*, 112 F.4th 598, 601 (8th Cir. 2024) (quoting Fed. R. Civ. P. 56(e)(2)). The nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *see also Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) (noting mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment). In so doing, the nonmoving party "cannot create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins.*, 49 F.3d 399, 402 (8th Cir. 1995).

"The district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial." *Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019) (quoting *Firemen's Fund Ins. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993)). "[T]he standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it could be presented at trial in an admissible form." *Id.* (quoting *Gannon Int'l Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012); citing Fed. R. Civ. P. 56(c)(2)).

## Discussion

### I. Count 1 – Sexual Orientation Discrimination/Hostile Work Environment

In Count 1 of the Complaint, Plaintiff asserts sexual orientation discrimination/hostile work environment in violation of Title VII, 42 U.S.C. § 2000e, *et seq*. Defendant argues that it is entitled to summary judgment on this claim because Plaintiff did not administratively exhaust any claim of sexual orientation discrimination. Plaintiff counters that Defendant has not met its burden to

prove the affirmative defense of failure to exhaust and that Defendant "cannot prove a negative without testimony from Plaintiff" whether he did or did not exhaust his administrative remedies. (Doc. 45 at 7.)

"Plaintiffs in discrimination cases against government agencies must exhaust their administrative remedies prior to filing a civil action in federal district court." *Watson v. O'Neill*, 365 F.3d 609, 614 (8th Cir. 2004). "[F]ailure to exhaust is an affirmative defense which must be proved by the defendant." *Blomker v. Jewell*, 831 F.3d 1051, 1062 (8th Cir. 2016). Under the applicable federal regulations, there is an informal stage and formal stage of administrative consideration for federal employment discrimination allegations. Initially, an aggrieved employee must contact a counselor employed by the relevant government agency to attempt informal counseling and resolution of the matter. 29 C.F.R. § 1614.105(a)(1). Then, if informal resolution is not reached, the employee must file a formal complaint of discrimination. 29 C.F.R. § 1614.106(b).

Here, Plaintiff initiated informal counseling around September 7, 2021, and then filed a formal administrative complaint around October 20, 2021. In the EEO report of (informal) counseling, the EEO counselor identified "Disability – Mental" and "Retaliation/Reprisal," as the bases or types of discrimination Plaintiff alleged. (Doc. 40-13 at 1.) The EEO counselor did not check the box for "Sexual Orientation" discrimination. (*Id.*) In Plaintiff's formal complaint of discrimination, Plaintiff marked the boxes for "Disability" and "Retaliation/Reprisal." (Doc. 4-14 at 3.) Plaintiff did not check the box for "Sex-LGBT" discrimination. (*Id.* at 3.) Plaintiff did not fill out box 14, which requested a narrative of the "action taken against you that you believe was discriminatory." (*Id.* at 2.)

Thus, while Plaintiff did engage in the informal and formal administrative process as to his disability and retaliation claims, Plaintiff did not properly exhaust his sexual orientation discrimination claim. The Eighth Circuit consistently requires that a subsequent complaint in a federal lawsuit be limited only to those allegations asserted at the administrative level:

> Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party with proper notice of the charge, as surely as would an initial failure to file a timely EEOC charge.

*Watson*, 365 F.3d at 614 (quoting *Williams v. Little Rock. Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994)). In *Williams*, the Eighth Circuit concluded that Williams failed to exhaust a claim for

race discrimination where he "fail[ed] to check the box for race discrimination" and his "EEOC charge does not even hint of a claim of race discrimination." *Williams*, 21 F.3d at 223. More recently, in *Weatherly v. Ford Motor Co.* the Eighth Circuit affirmed a district court's ruling that Weatherly's claims for reasonable accommodation and disability were not exhausted because "Weatherly marked only the box next to 'RETALIATION' on the relevant form." 994 F.3d 940, 945 (8th Cir. 2021).

Here, Plaintiff failed to mark the box for "Sex-LGBT" discrimination in his formal administrative complaint of discrimination. In addition to failing to check the box, Plaintiff failed to fill out the narrative portion of the formal complaint; thus, the formal complaint is completely lacking in any allegations pertaining to sexual orientation discrimination.[7] Therefore, pursuant to *Williams* and *Weatherly*, the Court concludes that Plaintiff did not exhaust the administrative process as to his sexual orientation discrimination claim in Count 1.

Accordingly, Defendant's motion for summary judgment is **GRANTED** as to Count 1.[8]

## II.    Count 2: Retaliation in Violation of Title VII

In Count 2, Plaintiff alleges retaliation in violation of Title VII, 42 U.S.C. § 2000e-3. The precise contours of Plaintiff's claim are unclear. Defendant construes Plaintiff's claim in Count 2 as a retaliation claim based on a hostile work environment. (Doc. 40 at 13 (citing Doc. 1 at ¶ 46 ("The continuing series of events planned and carried out by Defendant IRS, as described above, are retaliatory in response to protected activity.")).) Plaintiff does not contest this characterization of Count 2 in his suggestions in opposition. (*See* Doc. 45 at 8-9.) Thus, the Court follows the parties' lead and construes Count 2 as a retaliation claim based on a hostile work environment; in other words, that in retaliation for protected activity, Plaintiff was subjected to a hostile work environment. Defendant thus argues that Plaintiff fails to show retaliation premised on hostile

---

[7] The Eighth Circuit has found that merely checking a box may not be sufficient to exhaust administrative processes. *See Slayden v. Ctr. for Behav. Med.*, 53 F.4th 464, 469 n.4 (8th Cir. 2022) ("The fact that Slayden checked a box for 'retaliation' on his charge is not enough to overcome the fact that his charge describes no retaliation."). Here, Plaintiff neither checked the "Sex-LGBT" box in his formal complaint nor described any discrimination based on his sexual orientation in the narrative portion of the form, which he left blank.

[8] Defendant is also entitled to summary judgment on Count 1 for the reasons discussed below with regard to Plaintiff's failure to establish evidence rising to the level of a hostile work environment.

work environment because the instances of harassment alleged are sporadic rather than severe and pervasive.

"[R]etaliation claims under Title VII [can] be based on a hostile work environment and need not be based solely on discrete adverse employment actions." *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 807 (8th Cir. 2019). In the Eighth Circuit:

> Hostile work environment claims are limited in nature, requiring a high evidentiary showing that the plaintiff's workplace is permeated with discrimination, intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

*Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008). To establish the required degree of severity and pervasiveness of the harassment, the conduct is analyzed under "both objective and subjective components"; the harassment must be "severe or pervasive enough to create an objectively hostile or abusive work environment and the victim must subjectively believe [his] working conditions have been altered." *Blomker*, 831 F.3d at 1056. To support a claim for retaliation more generally (whether based on hostile work environment or a discrete act) "a plaintiff must show (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her [or plaintiff was subjected to a hostile work environment]; and (3) a causal connection exists between the two events." *Blackwell v. Alliant Techsys., Inc.*, 822 F.3d 431, 436 (8th Cir. 2016) (internal quotation marks omitted).

Here, the Court finds that Plaintiff has not established either (1) the level of pervasive and severe harassment necessary to support a retaliation claim based on hostile work environment, or (2) the necessary causal connection between any protected activity and the alleged harassment. Defendant identifies four incidents Plaintiff suggests contribute to workplace harassment in the complaint:

1. The interaction with Mr. Brown on April 30, 2021, during which Mr. Brown used derogatory slurs;

2. The June 29, 2021, request by Ms. Allen that Plaintiff change working teams, which Plaintiff asserts led to him losing his extra responsibilities of Backup Work Lead and On-the-Job Instructor;

3. The August 4, 2021, memorandum finding that Plaintiff and Mr. Brown were both at fault for the April 2021 interaction; and

4. The September 2, 2021, request by Plaintiff to be moved from the night shift to the day shift.

(Doc. 40 at 14.) In response, Plaintiff does not identify any further instances of alleged harassment in support of his retaliation claim based on hostile work environment. Plaintiff instead again argues that Defendant "attempts to provide a negative through documents without testimony of Plaintiff." (Doc. 45 at 8.) As best as the Court can discern, it appears that Plaintiff is arguing that Defendant cannot defeat summary judgment on Plaintiff's retaliation claim by arguing that there are no other instances of harassment and that those in the record are insufficient to establish hostile work environment.

Plaintiff's argument suffers from a fatal flaw. The burden is on Plaintiff to make out a prima facie case for retaliation based on hostile work environment. *See Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 851 (8th Cir. 2012) (affirming summary judgment in favor of defendant on claims of race and age discrimination where plaintiffs did not "produce[] sufficient evidence to make out a prima facie case"). In the summary judgment record, Defendant supported with evidence facts about the alleged harassment and IRS's conduct which the Court concludes below is insufficient to establish hostile work environment. It was then Plaintiff's burden in opposing summary judgment to provide evidence to the contrary by properly controverting Defendant's statement of facts or by properly supporting new assertions in Plaintiff's additional statement of uncontroverted facts. Plaintiff did not do this. Instead, Plaintiff briefly argues that Mr. Brown's comments during the April 2021 incident, Plaintiff being asked to move teams, and the fact that Plaintiff's supervisor know of his ADHD are sufficient to establish hostile work environment.[9] The Court disagrees.

First, as to the April 2021 interaction between Plaintiff and Mr. Brown, Plaintiff has not shown that this alleged harassment occurred *after* any protected activity, such as complaining of discrimination to management. Thus, it is unclear how this instance could be retaliatory. *See*

---

[9] Plaintiff's entire argument related to hostile work environment, (which covers Counts 2-4), appears in three short paragraphs which amount to just over a page of text. (*See* Doc. 45 at 8-9.) Courts frequently find that failure to address arguments or oppose basis for summary judgment constitutes waiver of those arguments. *See Norfolk S. Ry. Co. v. Mayor City of Liberty*, No. 4:25-cv-00064-DGK, 2026 WL 523415, at *4 (W.D. Mo. Feb. 25, 2026) (citing *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) (finding a "[f]ailure to oppose a basis for summary judgment constitutes a waiver of that argument")). To the extent Plaintiff failed to respond to Defendant's arguments, opposition to those arguments are waived.

*Florida v. Heartland Behav. Health Servs.*, No. 09-cv-5080-RED, 2010 WL 4220498, at \*5 (W.D. Mo. Oct. 20, 2010) ("Employment actions undertaken before Plaintiff engaged in her protected activity cannot be retaliation for the subsequent protected activity."). Second, this single instance of workplace harassment is insufficient to rise to the level of a hostile work environment. *Bailey v. Augustine Med.*, No. 01-695 ADM/AJB, 2003 U.S. Dist. LEXIS 1963, at \*28 (D. Minn. Feb. 7, 2003) ("A single offensive utterance does not create an actionable hostile work environment (citing *Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997))). Moreover, this was a single instance of conduct by a *co-worker*, rather than a supervisor. To establish a hostile work environment claims based on the actions of co-workers, Plaintiff must "present evidence that the employer knew or should have known about the harassment and failed to respond in a prompt and effective manner." *Anderson v. Durham D&M, LLC*, 606 F.3d 513, 519 (8th Cir. 2010) (internal quotation marks omitted). Here, Plaintiff has not pointed to any evidence in the record that the IRS knew or should have known about the asserted harassment by Mr. Brown until after it occurred. The IRS responded to Plaintiff's complaint by initiating an investigation and ordering no contact between Plaintiff and Mr. Brown.

The interaction with Mr. Brown is related to another of Plaintiff's complaints—that the investigation ended with a determination that both Plaintiff and Mr. Brown were at fault. As Defendant points out, Plaintiff requested the investigation and Plaintiff does not identify any deficiency in the investigation. It is unclear how the investigation amounts to an act of harassment. Plaintiff also does not provide any evidence suggesting or leading to the inference that the IRS made its investigation determination because of any protected activity by Plaintiff.

Plaintiff fairs no better explaining how the other instances of alleged harassment rise to the level of a hostile work environment. As to the request to change teams, the record shows that Plaintiff asked to stay on the current team and that management accommodated this desire. The fact that Plaintiff would "no longer be utilized as On-the-Job Instructor" appears to stem from Plaintiff's decision to remain; moreover, these special job responsibilities were only originally set to last until August 11, 2021 (less than a month and a half later than when they actually ended). (Doc. 45-6 at 1.) And again, Plaintiff fails to suggest what the causal relationship between any protected activity and this "harassment" is. Thus, even considering these events together, the Court

finds that they do not rise to the level of a hostile work environment and that Plaintiff has failed to show that any of these actions were caused by or in retaliation of any protected activity.[10]

Accordingly, Defendant's motion for summary judgment is **GRANTED** as to Count 2.

### III.    Counts 3 & 4: Americans with Disabilities Act

In Counts 3 and 4, Plaintiff alleges disability discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* Defendant argues that Plaintiff cannot assert a cause of action against the IRS, a federal government employer, under the ADA. Plaintiff responds that the Court should construe the claims as arising under the Rehabilitation Act.

The ADA's employment discrimination provisions do not apply to the federal government as an employer. *See* 42 U.S.C. § 12111(5)(B)(i). Thus, Plaintiff cannot pursue claims arising from his federal employment under the ADA. *See Carroll v. Potter*, 163 F. App'x 450, 450 (8th Cir. 2006) ("[W]e agree with the district court that Carroll could not file suit under the ADA to redress alleged discrimination occurring during his tenure as a federal employee."). Courts routinely dismiss ADA claims brought by federal employees. *See, e.g.*, *Loos v. Napolitano*, 665 F. Supp. 2d 1054, 1057 (D. Neb. 2009) (concluding federal employee was not entitled to recover under ADA); *Ebner-Cupples v. Potter*, No. 4:05-cv-1448-RWS, 2007 WL 541712, at *6 n.4 (E.D. Mo. Feb. 16, 2007) ("Ebner-Cupple[s] cannot assert a claim under the ADA because relief under the ADA is not available for federal employees."); *Smythe v. Potter*, No. 4:05-cv-1471 FRB, 2006 WL 2927545, at *3 (E.D. Mo. Oct. 11, 2006) ("[A]s a federal employee, plaintiff is unable to obtain relief under the ADA against the United States on his claim of disabilities discrimination.").

While the plaintiffs in *Loos* and *Ebner-Cupples* also asserted disability claims under the Rehabilitation Act, and thus proceeded as to those claims, the plaintiff in *Smythe v. Potter* only asserted a disability discrimination claim pursuant to the ADA. Nevertheless, the Eastern District of Missouri dismissed Smythe's ADA claim against the United States Postal Service for failure to state a claim. *Smythe*, 2006 WL 2927545, at *3. The court declined to construe Smythe's claim as arising under the Rehabilitation Act or any other statutory authority, noting:

> In consideration of the instant motion, the undersigned is mindful that plaintiff is represented by counsel in these proceedings. As such, plaintiff's Complaint, drafted by counsel, is not entitled to the liberal construction generally accorded pro se pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also, e.g.*,

---

[10] Neither party addresses Plaintiff's retaliation claim in relation to discrete-act retaliation (rather than hostile work environment). Even if the Court were to construe it in this way, Defendant would be entitled to summary judgment because of the causation issues noted above.

11

*Fray v. Schuetzle*, 78 F.3d 359, 361 n.2 (8th Cir. 1996) (mindful that petition was prepared by counsel, court believes it should adjudicate only those claims upon which relief was actually sought).

*Id.* at *3 n.1; *see also Hill v. McDonough*, No. 4:21-cv-00466-RK, 2023 WL 2061246, at *7 (W.D. Mo. Feb. 16, 2023) (granting summary judgment in favor of defendant sua sponte where Hill alleged age and disability discrimination under Title VII, which does not cover age and disability discrimination, and Hill did not assert claims under the ADEA or ADA in the complaint), *aff'd* No. 23-1797, 2024 WL 2890977 (8th Cir. June 10, 2024).

In light of the foregoing authority and the fact that Plaintiff has been represented by counsel in this case, the Court declines to liberally construe the complaint as asserting claims under the Rehabilitation Act. Accordingly, Defendant's motion for summary judgment is **GRANTED** as to Counts 3 and 4.[11]

### Conclusion

Accordingly, after careful consideration and for the reasons explained above, the Court **ORDERS** that Defendant's motion for summary judgment, (Doc. 40), is **GRANTED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: April 20, 2026

---

[11] Even if the Court were to construe Plaintiff's claims in Counts 3 and 4 as arising under the Rehabilitation Act, the Court notes that Plaintiff did not make any argument in its suggestions in opposition to summary judgment or cite to any evidence in the record in support of a prima facie case under the Rehabilitation Act. (*See* Doc. 45 at 9-10.)

Additionally, to the extent these claims are based on hostile work environment, as Defendant construes them without objection or any other indication to the contrary by Plaintiff, Defendant would also be entitled to summary judgment for the reasons explained above in relation to Plaintiff's Title VII retaliation claim, specifically, that Plaintiff failed to demonstrate severe and pervasive conduct which rises to the level of hostile work environment.